IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
     :   No. 1315 C.D. 2013
     v.      :
     :   Submitted: May 9, 2014
William Jackson,      :
         Appellant      :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH             FILED: August 11, 2014


William Jackson (Jackson) appeals, *pro se*, from the May 20, 2013 order of the Court of Common Pleas of Philadelphia County (trial court), directing that $8,603.00 in United States currency be forfeited to the Commonwealth of Pennsylvania (Commonwealth) pursuant to the Controlled Substances Forfeitures Act (Forfeiture Act).[1] The currency was confiscated from Jackson's pant pockets during a search and seizure that the police conducted after a vehicle operated by Jackson ran a red light and the officers smelled and located marijuana in the vehicle.

This case returns to us following our decision in *Commonwealth v. Jackson*, 53 A.3d 952 (Pa. Cmwlth. 2012) ("*Jackson I*"), wherein we vacated the trial court's order directing forfeiture and remanded for further proceedings. In *Jackson I*, this Court initially concluded that although Jackson was acquitted of the underlying

---

[1] 42 Pa.C.S. §§6801-6802.

drug possession charges, the Commonwealth was not precluded from seeking forfeiture. *Id.* at 955-56.[2] Next, this Court questioned whether Jackson, by virtue of being imprisoned at the time, received proper notice of the forfeiture proceedings, and we remanded the matter "so that the trial court can determine whether Jackson was properly notified of his right to attend the hearing" and whether Jackson waived his right to attend the hearing. *Id.* at 956-97. Finally, this Court was unable to discern from the record certified on appeal whether Jackson was successful in suppressing evidence during his criminal trial; accordingly, we further instructed the trial court on remand "to determine whether evidence it used to support forfeiture of Jackson's money was, indeed, suppressed on the basis of an unlawful search and seizure, and whether there is independent, unsuppressed evidence that the money is contraband that would support forfeiture." *Id.* at 958 & n.9.

On remand, the trial court ensured that Jackson received proper notice and Jackson participated in a hearing held on May 20, 2013. At this hearing, Officers Barry Stewart and Marvin Ruley testified to the following facts. On June 28, 2009, at approximately 8:00 p.m., Officers Stewart and Ruley stopped a purple Dodge Charger that was being driven by Jackson because they observed it run a red light. Officer Stewart noticed an opening of multiple holes in the metal of the car, which he recognized as being consistent with bullet holes. When the passenger rolled down the

---

[2] Under Pennsylvania law, neither a criminal prosecution nor a conviction is required for property to be deemed forfeitable pursuant to the Forfeiture Act. *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 530 (Pa. 2005); *Commonwealth v. 542 Ontario St.*, 989 A.2d 411, 417 (Pa. Cmwlth. 2010) (*en banc*) (stating that it "is not necessary . . . that a forfeiture be supported by an underlying criminal conviction.") (citation and quotation omitted). The rationale behind this rule is that forfeiture "is a civil consequence of violating a criminal statute" and, consequently, "property is forfeited not as a result of a criminal conviction but in a separate civil proceeding." *Commonwealth v. Assorted Consumer Fireworks*, 16 A.3d 554, 558 (Pa. Cmwlth. 2011).

window, the officers smelled a strong odor of burnt marijuana emanating from within the vehicle. The officers asked the passenger to step out of the car and saw a marijuana cigarette in the door handle next to his seat. Officer Stewart arrested the passenger for possession of marijuana and placed him in the back seat of the police cruiser. Prior to placing the passenger in the cruiser, Officer Stewart conducted a thorough search of the passenger's person and effects and located one packet of marijuana. (Trial court op. at 1-2; Notes of Testimony (N.T.) at 35-37, 64-67.)

Officer Ruley approached the driver's side of the car and Jackson was unable to provide a license, registration, or proof of insurance. Officer Ruley asked Jackson to step out of the vehicle and noticed large bulges in his pockets. Upon questioning, Jackson informed Officer Ruley that the bulges were cash, and Officer Ruley seized $8,603.00 from Jackson's pockets, which consisted of various common denominations, including 238 twenty dollar bills, 98 ten dollar bills, and 133 one dollar bills. Because Officer Ruley was not satisfied with Jackson's explanations as the vehicle's ownership, he declared a "live stop,"[3] and Officer Stewart handcuffed Jackson and placed him in the back of the cruiser next to the passenger. Moments later, Officer Stewart observed Jackson moving around inside the vehicle and talking to the passenger so he moved the passenger into another police cruiser. When Officer Stewart later removed Jackson from the police cruiser, he observed 62 packets of heroin, 31 packets of crack cocaine, and 1 packet of marijuana on the floor. (Trial court op. at 1-2; N.T. at 39-40, 66-74.)

---

[3] As this Court observed in *Jackson I,* "[p]ursuant to Section 6309.2(a) of the Vehicle Code, 75 Pa.C.S. §6309.2(a), when a police officer verifies that a person is operating a vehicle without a valid driver's license or registration, he must immobilize the vehicle, have it towed and stored, and notify the appropriate judicial authority." 53 A.3d at 954 n.2.

In response, Jackson testified that the confiscated money was left over from student loan and bail refunds and that he was going to use it to purchase a car. (Trial court op. at 6; N.T. at 110-15.)

By order dated May 20, 2013, the trial court granted the Commonwealth's petition for forfeiture. In its opinion, the trial court explained that it had examined the record from Jackson's criminal trial, which reflected that Jackson had moved to suppress the currency recovered from his pockets; the drugs recovered from the police cruiser; and inculpatory statements he made while he was in the back of the cruiser, and his motion had been granted only with respect to the incriminating statements that he made without receiving *Miranda*[4] warnings; the suppression court denied Jackson's motion to suppress the currency and drugs because there was probable cause to arrest him. The trial court determined that it was bound by the suppression court's previous ruling. The trial court also noted that even if it were not bound, after considering all the evidence and argument presented at the May 20, 2013 hearing, it would have ruled in the same manner as that of the suppression court. (Trial court op. at 4-5.)

Having determined that the currency and the drugs were not the byproduct of an unlawful search or seizure, the trial court then concluded that the Commonwealth established a sufficient nexus between the currency and unlawful activity. Specifically, the trial court credited Officer Stewart's testimony that the drugs were found in the back of the cruiser where Jackson sat and that the only other passenger was searched incident to arrest and all drugs were recovered from the passenger's person before he was placed in the cruiser. The trial court concluded that it was a fair inference that the drugs in the cruiser belonged to Jackson and that the

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

presence of these drugs made it more probable than not that the currency in Jackson's pocket was drug-related. (Trial court op. at 5-6).

Finally, the trial court concluded that Jackson failed to meet his burden of establishing an innocent owner defense. In so concluding, the trial court found that Jackson's testimony was not credible because a year had passed between Jackson's receipt of the refunds and his arrest and that it would be impractical for an individual to carry $8,603.00 as "pocket" money. The trial court also discredited any notion that Jackson lawfully possessed the money to buy a vehicle. (Trial court op. at 6-7.)

On appeal to this Court,[5] Jackson argues that the police confiscated his currency and the drugs in an unconstitutional manner and that both of these items should have been excluded as evidence in the forfeiture proceedings.

This Court has held:

> It is well settled that the Commonwealth may not permanently acquire derivative contraband which it has initially seized unconstitutionally. Because of the underlying penal purpose of the forfeiture proceedings, the United States Supreme Court had long ago determined that the remedy for violations of the Fourth Amendment, the exclusionary rule, extends to forfeiture proceedings.

*Jackson I*, 53 A.3d at 957-58 (quoting *Commonwealth v. McJett*, 811 A.2d 104, 108 n. 5 (Pa. Cmwlth. 2002)). Therefore, "[o]nly where the government has independent, unsuppressed evidence that the res is contraband is it entitled to proceed on the merits

---

[5] This Court's scope of review in an appeal from a forfeiture proceeding is limited to determining whether the trial court's findings were supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce Street, Philadelphia, Pa.*, 832 A.2d 396, 398 (Pa. 2003).

in a forfeiture case." *Jackson I*, 53 A.3d at 958 (quoting *Commonwealth v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 392 (Pa. Cmwlth. 1996)).[6]

Under Pennsylvania law, an arrest is "any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest . . . ." *Commonwealth v. Rodriquez*, 614 A.2d 1378, 1384 (Pa. 1992) (citation omitted). The police must possess probable cause to effectuate a warrantless arrest, and probable cause is present where "the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." *Commonwealth v. Lawson*, 309 A.2d 391, 394 (Pa. 1973). "Probable cause justifying a warrantless arrest is determined by the totality of the circumstances," *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008), and "[p]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act." *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005).

When a police officer makes an arrest supported by probable cause, the officer may conduct "a search of an arrestee's person and the area within an arrestee's immediate control as a matter of course because of the ever-present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence." *Commonwealth v. Timko*, 417 A.2d 620, 622 (Pa. 1980). This type of search is commonly referred to as a search incident to arrest. *Commonwealth v. Thompson*, 778 A.2d 1215, 1221-22 (Pa. Super. 2001).

---

[6] Notably, this Court has addressed the constitutionality of searches and seizures in the context of forfeiture proceedings. *See, e.g., McJett*, 811 A.2d at 108-09; *Commonwealth v. $16,208.38 United States Currency*, 635 A.2d 233, 236-37 (Pa. Cmwlth. 1993).

Here, following a lawful traffic stop, Officers Stewart and Ruley smelled a strong odor of marijuana emanating from the vehicle. Standing alone, this olfactory observation gave the officers probable cause to arrest both Jackson and the passenger. *See Commonwealth v. Pullano*, 440 A.2d 1226, 1127-28 (Pa. Super. 1982) (concluding that officers had probable cause to arrest when they smelled marijuana emanating from an apartment). In addition, during a traffic stop, an officer may order both the driver and the passenger out of the vehicle as a matter of right. *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007). When the passenger in this case exited the vehicle, the officers observed a marijuana cigarette in plain view. This is yet another factor establishing probable cause to believe that either Jackson, the passenger, or both possessed marijuana on their persons or that marijuana was located within the vehicle. *See Commonwealth v. Stoner*, 344 A.2d 633, 635 (Pa. Super. 1975) ("The marijuana which was in plain view was sufficient to establish probable cause for the search of the car."). Because the officers had probable cause to arrest Jackson, Officer Ruley was able to confiscate the currency in Jackson's pockets as a matter of right pursuant to a search incident to arrest. Finally, Officer Stewart acted within his authority when he confiscated the drugs that Jackson discarded in the cruiser because Jackson was detained lawfully at that time and the drugs were laying in plain view. *See Commonwealth v. Santiago*, 736 A.2d 624, 633 (Pa. Super. 1999) (concluding that seizure of drugs in plain view was permissible where officers were lawfully in an apartment). Therefore, we conclude that the trial court and/or the suppression court did not err in failing to suppress the currency in Jackson's pockets or the drugs that were found in the cruiser.

Jackson also asserts that the trial court erred in failing to conduct a new suppression hearing during the forfeiture proceedings. We disagree. In the criminal law context, where multiple prosecutions or retrials have occurred,

> [A] decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence which was previously unavailable. Absent such new evidence the suppression judge in the second prosecution must adopt the findings and conclusions of the first judge, and incorporate them into the record. Thereupon, the party against whom the first decision is offered may have the validity of the decision reviewed on appeal.

*Commonwealth v. Lagana*, 509 A.2d 863, 866 (Pa. 1986) (citation omitted).

Here, Jackson did not proffer or present any previously unavailable evidence at the forfeiture hearing with respect to suppression. We conclude, accordingly, that the trial court did not err in deeming itself bound by the suppression court's previous ruling. *See Commonwealth v. Henderson*, 520 A.2d 1372, 1373 (Pa. 1987) (concluding that "prior suppression court decisions could be given collateral estoppel effect, unless the person against whom the decision was rendered alleged new evidence not previously available.").

Next, Jackson contends that the Commonwealth failed to establish a nexus between the currency and the drugs in the cruiser.

> In a forfeiture proceeding, the Commonwealth has the burden to establish, by a preponderance of the evidence, that a nexus between the property subject to forfeiture and an unlawful activity exists. Preponderance of the evidence is tantamount to a "more likely than not" standard. Proof by a preponderance of the evidence is often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped.

8

> The preponderance of the evidence standard does not require the Commonwealth to produce evidence directly linking seized property to illegal activity. For example, circumstantial evidence can be used to establish a party's involvement in drug activity to support a forfeiture. Further, although in most cases drugs are present at the time of seizure, there is no requirement that drugs be present.

*McJett*, 811 A.2d 104 at 110 (citations omitted). If the Commonwealth establishes the requisite nexus, the burden then shifts to the claimant to establish the innocent owner defense, namely that the claimant owns the money; he lawfully acquired it; and the money was not unlawfully used or possessed by him. 42 Pa.C.S. §6802(j).

Here, we agree with the trial court that the evidence supports the inference that Jackson possessed 62 packets of heroin, 31 packets of crack cocaine, and 1 packet of marijuana and discarded these items onto the floor of the police cruiser. Jackson's possession of these drugs, coupled with the currency confiscated from his pockets, makes it more likely than not that the currency was connected to the narcotics. *See Commonwealth v. $259.00 Cash U.S. Currency*, 860 A.2d 228, 231 (Pa. Cmwlth. 2004) (*en banc*) (concluding that claimant's possession of money at the same time as his possession of the drugs was more than sufficient to establish the required nexus). Therefore, we conclude that the Commonwealth has demonstrated the requisite nexus between the currency and illegal activity.

Finally, Jackson contends that the trial court's ruling was against the weight of the evidence because he had receipts demonstrating that he received refunds for his bail and student loans.

With respect to a weight claim,

> [O]ur role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its

9

discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (citations omitted).

Here, it was within the trial court's discretion, as factfinder, to reject Jackson's evidence as not credible, in large part, because he received his refund money over a year prior to his arrest. Therefore, we conclude that the trial court did not err in determining that forfeiture was not against the weight of the evidence. *See Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012) (concluding that the trial court did not abuse its discretion in denying weight claim: "This Court is not permitted to reweigh . . . credibility determinations on appeal" and the factfinder's "decision to credit certain evidence and reject other testimony is appropriate"); *$259.00 Cash U.S. Currency*, 860 A.2d at 232 (finding no merit to weight claim where the claimant "produced supporting documentation in a monthly wage statement obtained from his former employer" to establish that the money was lawfully his and the trial court rejected this evidence as not credible).

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania          :
                                      :     No. 1315 C.D. 2013
              v.                      :
                                      :
William Jackson,                      :
              Appellant               :

## ***ORDER***

AND NOW, this 11th day of August, 2014, the May 20, 2013 order of the Court of Common Pleas of Philadelphia County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge